UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLEY WATKINS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND, et al.,<br><br>Defendants. | Case No. 17-cv-06002-JCS<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

## I.    INTRODUCTION

Plaintiff Shelley Watkins, a sixty-five year old man, brings this action against Defendants the City of Oakland ("Oakland," or the "City"), Oakland Police Department Chief Sabrina Landreth, several Oakland police officers, and several Doe defendants for claims related to an arrest that Watkins alleges was not supported by probable cause.  Defendants move to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court held a hearing on January 26, 2018.  For the reasons discussed below, Defendants' motion—which pervasively misrepresents the allegations of Watkins's complaint—is DENIED.[1]

## II.    BACKGROUND

### A.    Allegations of the Complaint

On October 25, 2016, Watkins drove with a companion, Donna Reed, from Sacramento, California to Oakland to participate in a bible study group.  Compl. (dkt. 1) ¶ 19.[2]  When they arrived in Oakland they stopped at a store, Reed went inside, and Watkins waited in the car.  *Id.*

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

[2] A plaintiff's factual allegations are generally taken as true on a motion to dismiss under Rule 12(b)(6).  Watkins's allegations are therefore summarized here as if true, but nothing in this order should be construed as resolving any issue of fact.

¶¶ 20–21. Watkins asked a passerby if he had a light for a cigarette, the man gave him a book of matches, and Watkins stepped out of the car to light his cigarette. *Id.* ¶ 21. The man asked Watkins if he had another cigarette, and Watkins said that he did not, but gave the man some spare change. *Id.* Watkins got back into the car and waited for Reed, and when she returned several minutes later, Watkins drove out of the parking lot to go to the bible study meeting. *Id.* ¶ 23. Watkins neither possessed nor sold narcotics, and had no intent to engage in illegal activity. *Id.* ¶ 22.

Defendant Officer Cedric Remo informed Defendant Officers Brandon Hraiz and William Berger that Remo had observed Watkins sell a controlled substance. *Id.* ¶ 24. After Watkins had driven about three blocks, Hraiz and Berger used the siren on their patrol car to pull him over. *Id.* ¶ 25. Watkins pulled over and complied with instructions to turn off the car, place the keys on the dashboard, step out of the car, and place his hands behind his back. *Id.* ¶¶ 25–26. Hraiz handcuffed Watkins and instructed him to stand against the patrol car, and Watkins complied. *Id.* ¶¶ 26–27. Hraiz patted Watkins down but recovered no contraband, and then forced Watkins to sit handcuffed in the back seat of the patrol car. *Id.* ¶ 27.

Watkins informed the officers that he was on his way to bible study, expressed frustration that he was detained "for no reason," and repeatedly asked why he was being detained. *Id.* ¶ 28. Hraiz informed Watkins "that other officers had observed him selling 'dope,'" and Watkins denied having done so. *Id.* ¶ 29. Watkins explained that while waiting for Reed at the store, he had received a light for his cigarette and had given the man who provided the light fifty-one cents in change. *Id.* Hraiz and Berger ignored Watkins's explanation, did not release him, and conducted no further investigation of the alleged narcotics sale. *Id.* Hraiz and Berger thoroughly searched Watkins's car while he was detained, but recovered no contraband and only thirteen dollars. *Id.* ¶ 30.

Hraiz and Berger arrested Watkins and drove him to the Alameda County Jail, where Doe defendants conducted a strip search, forcing Watkins to squat and cough while naked, which Hraiz and Berger observed. *Id.* ¶ 32. "DOE Defendants looked in [Watkins's] mouth, between his legs, and under his testicles." *Id.*

Defendants make much of one paragraph of Watkins's complaint describing a police report, which reads in full as follows:

> In a police report, Defendant REMO stated that he had "a clear and unobstructed view of WATKINS from approximately 20 feet away" and that the "surveillance was conducted during daylight hours, so there was plenty of sunlight." Defendant REMO claimed that he observed a black male, Keith Williams, approach Plaintiff, and that Plaintiff exited his vehicle. Defendant REMO fabricated that he observed the two engage in a brief conversation and that Williams had currency in his right hand. Defendant REMO falsely stated that he observed Plaintiff reach into his right front jean pocket and pull a small folded piece of paper and give it to Williams in exchange for U.S. Currency. Defendants [Officers] ROWE,[3] [Nathaniel] WALKER and [Brenton] LOWE all falsely claimed that they observed Plaintiff and Williams engage in a narcotics sale.

*Id.* ¶ 31. Watkins alleges on information and belief that Remo, Walker, and Lowe "knowingly, intentionally, and maliciously communicated false and fabricated claims to the Alameda County District Attorney's Office that they observed [Watkins] engage in a narcotics sale when in fact they observed only lawful behavior by [Watkins]." *Id.* ¶ 33.

The Alameda County District Attorney's Office charged Watkins with selling a controlled substance in violation of California Health and Safety Code section 11379(a), and Watkins was required to post a $30,000 bond, for which he paid a $3,000 nonrefundable deposit. *Id.* ¶¶ 34–35. He was also required to appear in court on four occasions before the Alameda County District Attorney's Office dismissed all charges against him on April 3, 2017. *Id.* ¶ 36. Watkins alleges damages including out-of-pocket costs, emotional distress, and stress-related physiological symptoms, as well as punitive damages and declaratory and injunctive relief. *Id.* ¶ 38; *see also id.* at 16–17 (prayer for relief). Watkins submitted a government tort claim to the City, which the City denied. *Id.* ¶ 13.

Watkins's complaint includes the following claims: (1) violation of the right to be free from unreasonable search and seizure and excessive force under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 against the individual defendants, Compl. ¶¶ 39–47; (2) *Monell* liability under § 1983 against the City and Landreth for failure to train, failure to

---

[3] There is no other reference in the complaint to anyone by the name of "Rowe." This is perhaps intended to refer to Remo.

supervise, and maintenance of defective policies and practices, *id.* ¶¶ 48–52; (3) violation of the rights stated above, as well as comparable rights secured by the California Constitution, under California Civil Code section 52.1 (the "Bane Act") against all Defendants, *id.* ¶¶ 53–58; (4) false arrest, against all Defendants, *id.* ¶¶ 59–63; (5) false imprisonment, against all Defendants, *id.* ¶¶ 64–68; (6) intentional infliction of emotional distress, against all Defendants, *id.* ¶¶ 69–74; (7) assault and battery, against all Defendants, *id.* ¶¶ 75–79; and (8) negligence, against all Defendants, *id.* ¶¶ 80–84.

**B.    Parties' Arguments**

**1.    Defendants' Motion to Dismiss**

Defendants argue that Watkins's first § 1983 claim should be dismissed because, even assuming the truth of his allegations, the arrest was reasonable and supported by probable cause, and thus did not violate the Fourth Amendment.  Mot. (dkt. 16) at 10.  Defendants contend that the arrest occurred after police officers "witness[ed] exchange of money for what appeared to be a paper containing drugs," and that "the Officers' mistake does not constitution [sic] a violation of the Fourth Amendment."  *Id.*  Defendants argue that Watkins's second § 1983 claim, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), also fails because "[a]ssuming *arguendo* that the City had an unlawful practice or policy," a *Monell* claim requires an underlying violation of rights pursuant to that policy or practice, and the complaint does not state such a claim because the arrest was reasonable.  Mot. at 10–11.  Defendants do not separately argue that Watkins's allegations regarding the existence of a policy or practice are insufficient.  *See id.*

Next, Defendants contend that the individual defendants are protected by qualified immunity, which "applies 'if [a[4]] reasonable officer could have believed that probable cause existed to arrest.'"  *Id.* at 11 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam)).  According to Defendants, because the officers "had a clear view of what appeared to be a drug sale," they are entitled to qualified immunity.  *Id.* at 12.  Defendants argue that the City is also immune under California Government Code section 815.2(b), which provides that a public entity

_____

[4] This appears as "an reasonable officer" in Defendants' motion, but appears correctly as "a reasonable officer" in *Hunter*.

is not liable for the actions of an employee if the employee is immune from liability. Mot. at 12.

Turning to the state law claims, Defendants rely on *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), for the proposition that the Bane Act requires a showing of coercion beyond that inherent in a wrongful arrest. Mot. at 12–13. Defendants argue that because Watkins asserts only that he was arrested without probable cause—and does not allege that Defendants used excessive force in making the arrest—his Bane Act claim must be dismissed. *Id.* at 13.

Defendants contend that Watkins's false arrest and false imprisonment claims[5] fail because California law provides a police officer is not liable under those theories if "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." *Id.* at 13 (quoting Cal. Penal Code § 847(b)). Much like their argument regarding the § 1983 claim, Defendants argue that Watkins "concedes that OPD [i.e., Oakland Police Department] arrest [sic] was based upon probable cause" because the officers "observed the drug transaction from approximately 20 feet and their view was 'clear and unobstructed.'" *Id.* at 14. As for Watkins's "assault and battery" claim, which Defendants construe as a claim for battery as defined by California Penal Code section 242, Defendants note that under California law police officers may use reasonable force in making an arrest, and argue that Watkins has not alleged unreasonable force here. *Id.* at 14–15. Defendants argue that Watkins's final claim, for negligence, must be dismissed as to the City because California law only recognizes public entity liability as specifically provided by statute, and Watkins cites no statute in the context of this claim. *Id.* at 15–16.

Finally, Defendants seek to dismiss Watkins's request for punitive damages. *Id.* at 16–17. The heading for this section of Defendants' brief states that the claim for "punitive damages against the City must be dismissed because public entities are exempt from liability for punitive damages." *Id.* at 16 (capitalization altered throughout). The text of that section, however, recognizes that Watkins "seeks to recover punitive damages against the individual Defendants,"

---

[5] Defendants state in a footnote that false arrest is not a separate tort from false imprisonment, but instead represents "'merely one way of committing a false imprisonment.'" Mot. at 13 n.4 (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001)).

and argues that the allegations in this case do not "rise to the level of evil required to justify an award of punitive damages." *Id.* at 16–17. Defendants once again assert that Watkins "concedes that his detention and arrest was based upon the Officers['] purported observation of him selling narcotics." *Id.* at 17.

Defendants do not seek dismissal of Watkins's negligence claim against the individual officers, or his claim for intentional infliction of emotional distress. *See id.* at 18 (listing the claims that Defendants seek to dismiss).

### 2. Watkins's Opposition

Watkins contends "[a]s a preliminary matter" that "Defendants repeatedly mischaracterize and ignore [his] pleadings." Opp'n (dkt. 20) at 6. He argues that Defendants, in asserting that he "'concedes' his arrest was based upon probable cause" and that the officers "'misunderstood' what they claim to have observed," ignore his allegations that Remo, Walker, and Lowe intentionally falsified their reports of what they observed. *Id.* at 6–7 (citing Mot. at 8, 13, 14, 17; Compl. ¶¶ 1, 31, 33). He also argues that Defendants' motion fails to account for his allegations that Defendants continued with the arrest and detention despite finding no contraband on Watkins's person or in his vehicle. *Id.* at 7 (citing *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005), for the proposition that a person cannot be arrested or held after any previously existing probable case "has dissipated").

According to Watkins, those overlooked or mischaracterized allegations undermine many of Defendants' arguments for dismissal. Watkins contends that Ninth Circuit authority establishes that "'charging someone on the basis of deliberately fabricated evidence'" is a clearly established violation of that person's civil rights sufficient to support a claim under § 1983 and to overcome qualified immunity. *Id.* at 7–8, 10–11 (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001)). Watkins also argues that he has alleged sufficient facts to support a claim for municipal liability under *Monell* based on the City's deliberate indifference to the effects of a custom or policy that led to the use of a fabricated report. *Id.* at 9–10. He contends that the lack of probable cause for arrest also rebuts Defendants' arguments as to his claims for false imprisonment, false arrest, and battery, because the California immunity statutes on which

Defendants rely only apply when an officer reasonably believes an arrest is lawful. *Id.* at 14–15. Watkins argues that his negligence claim survives because it sufficiently alleges that the City is liable for its employees' negligence, but if the Court is inclined to dismiss that claim, he requests leave to amend to specifically cite Government Code section 815.2, which provides for such liability. *Id.* at 15–16. He notes that he does not seek punitive damages against the City, and argues that allegations of intentionally fabricating a police report are sufficient to support a claim for punitive damages against the individual officers. *Id.* at 16–17.

Watkins devotes the largest section of his opposition brief to his claim under the Bane Act. *Id.* at 11–14. He relies on *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017), a recent California Court of Appeal decision that declined "'to accept the premise that *Shoyoye* applies in unlawful arrest cases,'" and held that rather than requiring a showing of coercion beyond that inherent in the arrest, "'the better approach . . . is to focus directly on the level of scienter required to support a Section 52.1 claim, without the trappings of *Shoyoye*'s frame of analysis.'" Opp'n at 12–13 (quoting *Cornell*, 17 Cal. App. 5th at 799). According to Watkins, his allegations here are sufficient to state a Bane Act claim within the framework of *Cornell* because he alleges that the officers intentionally deprived him of a clearly established right. *Id.* at 13–14.

### 3. Defendants' Reply

Defendants begin their reply brief by summarily asserting that the officers had probable cause to arrest Watkins:

> Plaintiff contends that this matter arises from OPD Officers' mistaken observation of him selling drugs to a third party. It is this alleged misunderstanding that leads to the arrest of the Plaintiff. OPD did not use force in arresting the Plaintiff, the Officers did not point a gun at Plaintiff and the Officers informed the Plaintiff at the time of his arrest the reason for his arrest.
>
> Plaintiff contends that what the Officers observed was an innocent transaction wherein a third party gave the Plaintiff a matchbook and gave the Plaintiff money. Assuming Plaintiff's allegations are true, the observations of the OPD officers constitute probable cause giving rise to a lawful arrest. Accordingly, the Court should dismiss the matter.

Reply (dkt. 22) at 2. Aside from those two paragraphs, the remainder of Defendants' reply is

devoted to the significance of the *Cornell* decision on which Watkins relies for his Bane Act claim. *See id.* at 2–4. Defendants do not address the allegations that the officers falsified their report or the significance of their failure to find contraband after searching Watkins's person and vehicle. *See generally id.*; *cf.* Opp'n at 6–10, 14–17 (arguing that those allegations are grounds for denying Defendants' motion).

Defendants note that the City and County of San Francisco petitioned on December 26, 2017 for the California Supreme Court to review the *Cornell* decision, the deadline for the Supreme Court to order review is sixty days after that filing, and if the Supreme Court does so, the Court of Appeal's decision would no longer have precedential effect and could instead be cited in other California courts only for its persuasive value. Reply at 2. Defendants ask that this Court wait until the review period has expired before relying on *Cornell*. *Id.*

Defendants also argue that the facts of *Cornell* are distinguishable from the allegations in this case, but although they recite the facts of *Cornell*, they do not clearly explain how those facts differ from Watkins's allegations or what if any differences are material for the purpose of the present motion. *Id.* at 3–4. Defendants state that "the *Cornell* court distinguished *Shoyoye* because in *Shoyoye* the parties conceded the arrest was lawful." *Id.* at 4. Ultimately, Defendants describe *Cornell* as having "trie[d] to side step the holding from *Shoyoye* that an arrest alone is insufficient to trigger the Bane Act," characterize its reasoning as "flawed," and ask this Court to "apply the well established holdings from *Shoyoye* and *Allen* [*v. City of Sacramento*, 234 Cal. App. 4th 41 (2012)]." Reply at 4.

## III.    ANALYSIS

### A.    Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

In resolving the present motion, the Court limits its analysis to those issues raised in Defendants' briefs. The Court declines to resolve, sua sponte, issues that Defendants have not addressed, such as whether the complaint includes sufficient factual allegations regarding the existence of a policy or practice to state a *Monell* claim, or the extent to which the analysis of particular claims might differ with respect to the various police officers named as defendants. Although the Court treats the individual defendants' liability interchangeably for the purpose of the present motion, both parties should be prepared to address each particular defendant's role in Watkins's arrest and detention to the extent appropriate in any future summary judgment motion practice.

**B.     Probable Cause for Arrest and Qualified Immunity**

Several of Watkins's claims turn on the question of whether Defendants reasonably believed there was probable cause to arrest him.  The Fourth Amendment right to be free of unreasonable seizures—which provides the basis for Watkins's first claim under § 1983 and his second claim under § 1983 and *Monell*—requires as a "general rule" that "seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 193 (2013) (citation and internal quotation marks omitted). With respect to the individual officers, the doctrine of qualified immunity would bar such a claim if the officers "'reasonably but mistakenly conclude[d] that probable cause [was] present.'" *Hunter v. Bryant*, 502 U.S. 224, 227 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). With respect to Watkins's fourth and fifth claims, for false arrest and false imprisonment, Defendants argue that they are immune under Penal Code section 847, which applies where a "peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." *See* Cal. Penal Code § 847(b)(2); *see also Cornell*, 17 Cal. App. 5th at 788 (holding that this statute is "coextensive with the doctrine of probable cause"). As for Watkins's seventh claim, for assault and battery, Defendants cite cases holding that an officer may use reasonable force to make a lawful arrest. *See* Mot. at 15 (citing, *e.g.*, *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004), *disapproved on other grounds by Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013)). The cases on which Defendants rely for that immunity in turn rely on section 835a of the California Penal Code, which applies only where an officer "has reasonable cause to believe that the person to be arrested has committed a public offense." Cal. Penal Code § 835a; *see Munoz*, 120 Cal. App. 4th at 1102 (citing § 835a). In the context of the allegations and arguments submitted in this case, Defendants would prevail on their motion as to each of these claims if Watkins's allegations show that there was probable cause to arrest, while Watkins would prevail if the allegations show that Defendants' lacked a reasonable belief that there was probable cause.

Watkins is correct that Defendants mischaracterize his allegations in their arguments that he "concedes" probable cause. Defendants' reliance on the paragraph summarizing Remo's report is entirely misplaced. That paragraph, which Defendants quote in full in their motion, explicitly

states: (1) that Remo "fabricated" that he observed a conversation between Watkins and Williams (the passerby who gave him matches) and that Williams had currency in his hand; (2) that Remo "falsely stated" that he observed Watkins remove a folded piece of paper from his pocket and give it to Williams in exchange for money; and (3) that "ROWE" (presumably Remo), Walker, and Lowe "falsely claimed" that they observed Watkins engage in a narcotics sale. *See* Mot. at 8–9 (quoting Compl. ¶ 31). In a separate paragraph, Watkins further alleges that Remo, Walker, and Lowe "knowingly, intentionally, and maliciously communicated false and fabricated claims to the Alameda County District Attorney's Office that they observed [Watkins] engage in a narcotics sale when in fact they observed only lawful behavior by [Watkins]." Compl. ¶ 33. Allegations that officers made fabricated or knowingly false statements about what they observed are not allegations that the conduct described in the report—i.e., Williams giving Watkins money[6] in exchange for a folded piece of paper that Watkins took from his pocket—actually occurred, or even that the officers believed that such conduct occurred. Taken as true, Watkins's allegations state the opposite: the officers knew that the report was false.[7]

A seizure "based solely on false evidence, rather than supported by probable case . . . fits the Fourth Amendment, and the Fourth Amendment fits [the] claim, as hand in glove." *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017). Watkins's allegations that he did not sell narcotics and that Remo and other officers intentionally fabricated their statements that they observed Watkins sell narcotics, taken as true in the context of the present motion to dismiss, suffice to support a plausible conclusion that the arrest lacked probable cause. *See* Compl. ¶¶ 22, 31, 33. Moreover,

---

[6] Defendants also misrepresent Watkins's allegations in their reply, stating that "Plaintiff contends that what the Officers observed was an innocent transaction wherein a third party gave the Plaintiff a matchbook and gave the Plaintiff money." Reply at 2. Watkins in fact alleges that he gave spare change to Williams, not that Williams gave money to him. Compl. ¶ 21; *see also id.* ¶ 29 (alleging that Watkins told the officers that he gave Williams fifty-one cents). This mischaracterization, while less egregious than the baseless assertion that Watkins "conceded" probable cause, is still troubling in that it falsely describes the allegations of Watkins's complaint in a manner that favors Defendants' arguments.
[7] Watkins's allegations that Remo stated he had a clear view from approximately twenty feet away and that the sun was shining do not characterize those statements as either true or false. *See* Compl. ¶ 31. Even if the Court were to infer that those statements were true, the fact that Remo had a clear view of the interaction tends, if anything, to support Watkins's position that any discrepancy between Remo's report and the facts as they actually occurred was intentional.

the Ninth Circuit has recognized "a *clearly established* constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government," such that government officials who knowingly bring such charges are not entitled to qualified immunity. *Devereaux*, 263 F.3d at 1074–75 (emphasis added).

As discussed above, Defendants' only arguments for dismissal of the first, second, fourth, fifth, and seventh claims rely on the officers having reasonably believed that the arrest was lawful because Remo and the other observing officers reasonably believed that had seen Watkins sell narcotics. Because Watkins has plausibly alleged that the officers lacked such belief, Defendants' motion is DENIED as to each of these claims.

### C. Negligence

Defendants argue that Watkins's negligence claim against the City should be dismissed because under California law "a public entity is not liable for injury '[e]xcept as otherwise provided by statute.'" Mot. at 15 (quoting Cal. Gov't Code § 815(a)) (alteration in original). Watkins does not dispute that public entity liability requires a statutory basis, but "argues that his negligence cause of action should survive Defendant's [sic] motion because it adequately alleges that the City is liable for the negligence of its employees." Opp'n at 15. Watkins requests leave to amend to cite Government Code section 815.2 if the Court is inclined to dismiss this claim, *id.* at 15–16, and Defendants do not address this issue in their reply.

Watkins is correct that under California law a "public entity is [generally] liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment." Cal. Gov't Code § 815.2. To the extent that Watkins states a claim for negligence against Oakland police officers acting within the scope of their employment—which Defendants do not challenge—the City is therefore also subject to liability.

The Court declines to dismiss that claim for failure to explicitly cite section 815.2. For one thing, the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted" so long as the complaint includes sufficient factual allegations to support a plausible claim. *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (per curiam) (reversing a decision that granted summary judgment for a

defendant where the plaintiffs had failed to specifically cite 42 U.S.C. § 1983 in a claim for violation of constitutional rights). Moreover, even if Watkins were required to cite section 815.2 in his complaint, paragraphs 57, 62, 67, 72, and 77 of the complaint in fact do so (in the context of Watkins's other state law claims), and Watkins begins his negligence claim by stating that it "incorporates by reference all of the preceding paragraphs as if each were fully alleged herein." Compl. ¶ 80. There is no basis to conclude that the City lacked notice of section 815.2, even if such notice were required. Defendants' motion is DENIED as to Watkins's negligence claim.

### D. Punitive Damages

Watkins seeks punitive damages under both § 1983 and California law. *See* Compl. at 17 ¶ 2 (prayer for relief). The test for punitive damages under § 1983 borrows from common law tort principles, and requires that "'the defendant's conduct is shown to be motivated by evil motive or intent, or [that] it involves reckless or callous indifference to the federally protected rights of others,'" which encompasses "malicious, wanton, or oppressive acts or omissions." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)). Neither party argues that the test is materially different under California law. *See* Cal. Civ. Code § 3294(a) (permitting recovery of punitive damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice").

At least one district court decision has held that officers who fabricated reports and attempted to have the plaintiff criminally prosecuted based on those reports were liable for punitive damages in an action under § 1983. *See Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1171–72 (N.D. Cal. 2009). Here, Defendants do not acknowledge Watkins's allegations that they knowingly falsified police reports, and do not respond to Watkins's arguments regarding punitive damages in their reply brief. Watkins's allegations that the individual defendants "knowingly, intentionally, and maliciously communicated false and fabricated claims" regarding Watkins's conduct, leading to Watkins's arrest, strip search, and detention without probable cause, are sufficient to state a claim for punitive damages at least under the "recklessness" and "oppression" tests for such damages. *See Dang*, 422 F.3d at 810 (characterizing "oppressive"

behavior for the purpose of punitive damages as encompassing "misuse of authority or power"). Defendants' motion to dismiss Watkins's request for punitive damages is DENIED.[8]

### E. "Threat, Intimidation, or Coercion" Under the Bane Act

The parties' arguments with respect to Watkins's Bane Act claim depend on which of two California Court of Appeal decisions this Court chooses to follow. Watkins does not argue that his complaint meets the test of *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), and Defendants do not meaningfully argue that the claim would warrant dismissal under the reasoning of *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017).

#### 1. Cases Considering the Bane Act's Coercion Requirement

Before *Shoyoye*, California courts had held that arrest without probable cause could in itself support a claim under the Bane Act. *See, e.g.*, *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1037 (2007) ("We conclude that there was no probable cause to arrest Gillan and thus he may recover on his Civil Code section 52.1 claim."). The California Supreme Court considered the requirements for a Bane Act claim in *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004), a case that involved a person arrested without probable cause and subsequently released without being charged, with no indication of excessive force or coercion beyond the arrest itself. *Venegas*, 32 Cal. 4th at 827–28. The *Venegas* court rejected the defendant county's argument that the Bane Act required a showing of "discriminatory animus." *Id.* at 841–43. The court held that the Bane Act "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right," but that "imposing added limitations on the scope of section 52.1 would appear to be more a legislative concern than a judicial one," and that the plaintiffs adequately stated a Bane Act claim for violations "accompanied by the requisite threats, intimidation, or coercion." *Id.* at 843.

The shift to require an additional showing of coercion beyond that inherent in the arrest began with a federal district court decision, which looked to a Massachusetts court's consideration

---

[8] Watkins does not seek punitive damages against the City. Compl. at 10 ¶ 47; *see also id.* at 17 ¶ 2 (prayer for relief). To the extent that Defendants' motion seeks to dismiss such a claim, *see* Mot. at 16 (heading addressing public entity immunity to punitive damages), it is denied as moot.

14

of an analogous law on which section 52.1 was based to determine that "a wrongful arrest and detention, without more," does not implicate section 52.1, which instead "requires a showing of coercion independent from the coercion inherent in a wrongful detention itself." *Gant v. County of Los Angeles* ("*Gant I*"), 765 F. Supp. 2d 1238, 1253–54 (C.D. Cal. 2011) (citing *Longval v. Comm'r of Corr.*, 404 Mass. 325 (1989)).

The California Court of Appeal in *Shoyoye* followed *Gant I* and *Longval*, specifically stating that it "agree[d]" with the statement in *Gant I* that the Bane Act "'requires a showing of coercion independent from the coercion inherent in a wrongful detention itself.'" *Shoyoye*, 203 Cal. App. 4th at 960 (quoting *Gant I*, 765 F. Supp. 2d at 1258). Before addressing that issue, however, *Shoyoye* also held the Bane Act "was intended to address only egregious interferences with constitutional rights, not just any tort," and that therefore the "act of interference with a constitutional right must itself be deliberate or spiteful." *Id.* at 958–59. That separate holding— that "mere negligence" is not sufficient—would have been sufficient to support the *Shoyoye* court's holding that a person subject to a valid arrest could not recover under the Bane Act for being detained for an excessive period of time due to a computer error and the negligence of jail personnel, without "any additional showing of ill will or blameworthy conduct." *See id.* at 957– 58. *Shoyoye* distinguished *Venegas* on the basis that the evidence in that case "could support a finding that the probable cause that initially existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights." *Id.* at 961.

This Court addressed *Shoyoye* in detail in *Hutton v. City of Berkeley Police Department*, No. 13-cv-03407-JCS, 2014 WL 4674295 (N.D. Cal. Sept. 4, 2014). Examining both *Venegas* and *Shoyoye*, the Court held "that *Shoyoye* must be read narrowly and with great care. In particular, the *holding* of the case is consistent with *Venegas* because, under the facts of *Shoyoye,* the detention involved only a negligent act, namely, a clerical error." *Id.* at *17. This Court found no "logical justification for the *Shoyoye* court's jump from the narrow conclusion that because a Fourth Amendment violation based on ordinary negligence cannot support a Bane Act claim, the coercion inherent in a wrongful detention is *never* sufficient to support a Bane Act

claim," and construed *Shoyoye*'s requirement of coercion beyond that inherent in the arrest as dicta. *Id.* Several other decision by federal district courts similarly "limited *Shoyoye* to its first holding, that § 52.1 requires intentional interference with a constitutional right, and not merely negligent acts," and declined to hold that, in cases involving intentional violations, the Bane Act "require[s] threats, coercion, or intimidation independent from the threats, coercion, or intimidation inherent in the alleged constitutional or statutory violation." *E.g.*, *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 789 (N.D. Cal. 2014) (considering and following "the great weight of authority in the Northern District of California").

Other decisions acknowledged and in some cases embraced *Shoyoye*'s holding regarding the need for additional coercion beyond that inherent in the violation. A California Court of Appeal in *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968 (2013), discussed *Shoyoye* but held that it "need not weigh in on the question whether the Bane Act requires 'threats, intimidation or coercion' beyond the coercion inherent in every arrest" because the plaintiff in that case was subject to excessive force as well as an unlawful arrest. *Bender*, 217 Cal. App. 4th at 978–79. In *Quezada v. City of Los Angeles*, 222 Cal. App. 4th 993 (2014), a California Court of Appeal briefly cited *Shoyoye* for the proposition that "[t]he coercion inherent in detention is insufficient to show a Bane Act violation," going on to hold that searches supported by probable cause, a threat to impound a vehicle subject to a valid search warrant, and a breathalyzer test permissible as a condition of employment did not support a Bane Act claim. *Quezada*, 222 Cal. App. 4th at 1008. More directly on point, a Court of Appeal in *Allen v. City of Sacramento* reviewed *Venegas*, *Shoyoye*, and the *Longval* decision from Massachusetts, among other authority, and affirmed judgment for the defendant because the case "involve[d] an allegedly unlawful arrest but no alleged coercion beyond the coercion inherent in any arrest." *Allen*, 234 Cal. App. 4th at 67–70.

The Ninth Circuit has cited *Shoyoye* and cases following it in two published decisions. First, in *Gant v. County of Los Angeles* ("*Gant II*"), 772 F.3d 608 (9th Cir. 2014)—considering an appeal from the district court decision that in part inspired *Shoyoye*—the Ninth Circuit briefly addressed the requirement of "'coercion' independent from that which is inherent in a wrongful arrest," noted that *Shoyoye* "indicates that such conduct must be 'intentionally coercive and

wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights,'" and held that the element could be satisfied by "officers' quick, insistent questioning . . . intended to coerce [a plaintiff] into stating that he was [the height listed in a warrant]," thus reversing the district court's dismissal of that plaintiff's Bane Act claim. *Gant II*, 772 F.3d at 624.[9]

In *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015), the Ninth Circuit stated that "[n]umerous California decisions make clear that a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act." *Lyall*, 807 F.3d at 1196 (citing *Allen*, 234 Cal. App. 4th 41; *Quezada*, 222 Cal. App. 4th 993; *Shoyoye*, 203 Cal. App. 4th 947). The *Lyall* court distinguished *Venegas* and *Bender*, stating that *Venegas* held only that "discriminatory animus" was not required and "did not otherwise address what elements the Bane Act requires," and that *Bender* "expressly declined to rule on whether the Bane Act required coercion beyond the coercion inherent in any arrest" because the excessive force in that case sufficiently established additional coercion. *Lyall*, 807 F.3d at 1196. The Ninth Circuit therefore affirmed in relevant part a verdict based on jury instructions that required proof of "threats, intimidation, or coercion . . . independent from the acts inherent in the detention and search." *See id.* at 1195. The court did not explicitly consider whether *Shoyoye* and its progeny were correctly decided or whether the California Supreme Court would likely follow the rule at issue. *See id.* at 1195–96.

These cases set the stage for the very recent decision in *Cornell*, which "do[es] not accept the premise that *Shoyoye* applies in unlawful arrest cases." *Cornell*, 17 Cal. App. 5th at 799. After reviewing *Shoyoye* and the history and structure of the Bane Act in some depth, as well as touching on *Bender* and *Allen*, the *Cornell* court addressed the issue as follows:

> We acknowledge that some courts have read Shoyoye as having announced "independen[ce] from inherent coercion" as a requisite element of all Section 52.1 claims alleging search-and-seizure violations, but we think those courts misread the statute as well as the import of *Venegas*. [footnote discussing *Lyall* omitted] By its

---

[9] An accompanying memorandum disposition in *Gant* addressing separate claims from the published opinion also cited and applied *Shoyoye*'s requirement of "'coercion independent from the coercion inherent in the wrongful detention itself.'" *Gant v. County of Los Angeles*, 594 F. App'x 335, 337 (9th Cir. 2014) (quoting *Shoyoye*, 203 Cal. App. 4th at 959).

plain terms, Section 52.1 proscribes any "interference with" or attempted "interference with" protected rights carried out "by threat, intimidation or coercion." Nothing in the text of the statute requires that the offending "threat, intimidation or coercion" be "independent" from the constitutional violation alleged. Indeed, if the words of the statute are given their plain meaning, the required "threat, intimidation or coercion" can never be "independent" from the underlying violation or attempted violation of rights, because this element of fear-inducing conduct is simply the means of accomplishing the offending deed (the "interference" or "attempted interference"). That is clear from the structure of the statute, which reads, "If a person or persons, whether or not acting under color of law, interferes *by* threat, intimidation, or coercion," a private action for redress is available. (§ 52.1, subd. (a), italics added.)

In *Venegas*—which rejected a construction of Section 52.1 limiting its applicability to "threat[s], intimidation or coercion" against minorities and other statutorily protected groups—the Supreme Court declined to place "added restrictions on the scope of section 52.1" beyond its plain language, concluding that that "would appear to be more a legislative concern than a judicial one." (*Venegas*, *supra*, 32 Cal.4th at p. 843, 11 Cal.Rptr.3d 692, 87 P.3d 1.) The same may be said here. Properly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no reason that, *in addition*, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded—and proved—unlawful arrest.

The phrase "under color of law" indicates, without doubt, that the Legislature intended to include law enforcement officers within the scope of Section 52.1 if the requisites of the statute are otherwise met. (See *ante*, fn. 16.) Much of what law enforcement officers do in settings that test the limits of their authority is "inherently coercive." Given that reality, it seems to us inconsistent with an intent to bring law enforcement within the scope of the statute—which is what the phrase "under color of law" does—to say, categorically, even where an unlawful arrest is properly pleaded and proved, that "where[ever] coercion is inherent in the constitutional violation alleged, . . . the statutory requirement of 'threats, intimidation, or coercion' is not met." (*Shoyoye*, *supra*, 203 Cal.App.4th at p. 959, 137 Cal.Rptr.3d 839.) When applied to both lawful and unlawful conduct, such a reading of Section 52.1, in effect, creates a judicially-fashioned immunity; and not merely a qualified immunity, but an absolute one covering a broad category of activity so long as it may be described as "inherently coercive."

*Cornell*, 17 Cal. App. 5th at 799–801 (all but second alteration in original).

The court declined to follow *Longval*, which it characterized as having given "no consideration to the text or structure of the [Massachusetts statute at issue], much less its origin in federal civil rights law," and held instead that where "an unlawful arrest is properly pleaded and

18

proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." *Id.* at 801–02.

### 2. Precedential Value of *Lyall* and *Cornell*

Defendants here acknowledge *Cornell* for the first time in their reply brief, and argue that this Court should, if inclined to follow that case, wait until the time has elapsed for the California Supreme Court to decide whether to review it. Reply at 2. Neither party discusses *Lyall*, but as a published opinion of the Ninth Circuit squarely adopting the rule from *Shoyoye* that is at issue here, the significance of that case also warrants attention. The Court begins there before turning to *Cornell*.

A Ninth Circuit panel's interpretation of state law is "only binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect." *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). Such an indication can take the form of "recent decisions by the California courts of appeal that have appeared subsequent to" the Ninth Circuit's opinion. *Id.*; *see also In re Watts*, 298 F.3d 1077, 1082–83 (9th Cir. 2002). If such intervening authority is present, a federal court returns to the default rules of interpreting state law: "'In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.'" *Owen*, 713 F.2d at 1464 (quoting *Andrade v. City of Phoenix*, 692 F.2d 557, 559 (9th Cir. 1982) (per curiam)). A federal court "must use [its] best judgment to predict" the state supreme court's decision. *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997) (citation omitted).

As noted above, *Lyall* applied *Shoyoye*'s rule that coercion inherent in an arrest is not sufficient to support a claim under the Bane Act. *See Lyall*, 807 F.3d at 1195. In *Cornell*, however, a California appellate court specifically cited *Lyall* as a case that "misread[s] the [Bane] Act] statute as well as the import of *Venegas*," and described *Lyall*'s characterization of "clear" California law supporting *Shoyoye* as "an overstatement." *Cornell*, 17 Cal. App. 5th at 799 &

n.28. *Cornell* thus not only conflicts with *Lyall*'s holding, but also explicitly disagrees with its reasoning. *Id.* In light of that "indication from the California courts that [*Lyall*'s] interpretation was incorrect," *Lyall* does not constitute binding precedent on this issue, and this Court must predict how the California Supreme Court would hold. *See Owen*, 713 F.2d at 1464; *see also Capital Dev.*, 109 F.3d at 519.

As for the status of *Cornell*, Defendants are correct that if the California Supreme Court grants review, the Court of Appeal's decision would "ha[ve] no binding or precedential effect, and [could] be cited for potentially persuasive value only." Cal. R. Ct. 8.1115. At this time, however, the California Supreme Court has not granted review, and the case remains a published, precedential opinion of a California appellate court. Moreover, it is not obvious that the distinction would matter for this Court's purposes, because *no* decision by a state intermediate court formally binds a federal court's interpretation of state law. This Court's task is to predict how the California Supreme Court would address the issue, and while federal courts will usually follow a consensus of state intermediate courts, they need not always do so. *See Owen*, 713 F.2d at 1464. Accordingly, whether precedential or merely persuasive within the state court system, the reasoning of *Cornell* would likely remain relevant to this Court's inquiry if the Court concludes that it is persuasive as to how the California Supreme Court would resolve the issue. Defendants may request reconsideration if, during the pendency of this case, the California Supreme Court actually decides the issue in a manner inconsistent with this order.

### 3. Watkins States a Claim Under the Bane Act

This Court concludes that the recent *Cornell* decision is more persuasive than *Shoyoye* and its progeny as to the coercion element of the Bane Act and better predicts how the California Supreme Court would interpret the statute. As discussed in *Cornell*, nothing in the text of the statute requires an additional showing of non-inherent coercion, and its prohibition of interference "'*by* threat, intimidation, or coercion'" tends to suggest that it encompasses conduct that is inherently coercive, as does its inclusion of conduct "'under color of law,'" which often involves some degree of inherent coercion. *See Cornell*, 17 Cal. App. 5th at 800 (quoting Cal. Civ. Code § 52.1) (emphasis added in *Cornell*). As far as this Court is aware, no decision of the California

Supreme Court suggests a contrary result, and that court's *Venegas* opinion, although not squarely addressing the issue, tends to support the holding of *Cornell* in its conclusion that a wrongful arrest with no element of excessive force presented "the requisite threats, intimidation, or coercion," as well as in its disapproval of judicially "imposing added limitations on the scope of section 52.1." *Venegas*, 32 Cal. 4th at 843; *see also Cornell*, 17 Cal. App. 5th at 800.

Adopting the test from *Cornell*, this Court therefore holds that, to state a claim under the Bane Act, Watkins must plausibly allege that Defendants "had a specific intent to violate [his] right to freedom from unreasonable seizure," and need not allege "something beyond the coercion 'inherent' in the wrongful detention." *See Cornell*, 17 Cal. App. 5th at 801–02.

Watkins alleges that Defendants pulled him over using the siren on their patrol car, ordered him to turn off his car, place his keys on the dashboard, step out of the car, and place his hands behind his back (among other instructions), handcuffed him, arrested him, subjected him to a strip search, and held him in jail. *See* Compl. ¶¶ 25–30, 32. Such actions by police officers are coercive. Although the parties do not address the intent requirement discussed in *Shoyoye* and *Cornell*, Watkins's allegations that Defendants knowingly falsified the only evidence suggesting that he had engaged in criminal conduct and arrested him without probable cause are sufficient at the pleading stage. Those allegations support a plausible inference that Defendants engaged in that conduct "with the particular purpose of depriving [Watkins] of his enjoyment of the interests protected by" the Fourth Amendment right to be free of unreasonable seizure, as well as comparable rights under state law, which are "clearly delineated and plainly applicable under the circumstances." *See Cornell*, 17 Cal. App. 5th at 803 (citations omitted). The conduct at issue here is not analogous to the facts of *Shoyoye*, where the plaintiff's wrongfully prolonged detention resulted from the defendants' negligent mistake involving a computer error. Watkins's allegations therefore demonstrate coercion within the meaning of section 52.1 as interpreted by *Cornell*, and Defendants' motion to dismiss his Bane Act claim is DENIED.

/ / /

/ / /

1    **IV.**    **CONCLUSION**

2        For the reasons discussed above, Defendants' motion is DENIED in its entirety.

3        **IT IS SO ORDERED.**

4    Dated: January 26, 2018

5

6                                JOSEPH C. SPERO
                                Chief Magistrate Judge